In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 13-3711

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT MADAY,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 08 CR 1075-1 — **Robert W. Gettleman**, *Judge.*

———————————

No. 14-2154

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROBERT MADAY,

*Defendant-Appellant.*

———————————

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 11 CR 847-1 — **Rubén Castillo**, *Chief Judge.*

_____

SUBMITTED JULY 22, 2015— DECIDED AUGUST 24, 2015
_____

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges*.

POSNER, *Circuit Judge*. Robert Maday was convicted, in two separate proceedings before different judges (Chief Judge Castillo and Judge Gettleman) of the same federal district court (the Northern District of Illinois), of federal crimes closely related in both time and type. He was sentenced separately by the two judges, which has created complications that are the gist of his two appeals to us. Separate lawyers were appointed to represent Maday in these two appeals and each has moved to withdraw from the case on the ground that the appeals are frivolous. See *Anders v. California*, 386 U.S. 738 (1967). One of the appeals, as we'll see—the appeal from Judge Castillo's sentence—is frivolous, and the motion of Maday's lawyer in that appeal to withdraw is therefore granted. The other appeal is not frivolous, and the motion of Maday's lawyer in that appeal to withdraw is therefore denied.

The case is complicated; we'll simplify where we can, for example by expressing all sentences in years (with rounding), though some were in months.

The first federal proceeding was before Judge Gettleman. Maday pleaded guilty in August 2009 to three bank robberies (all committed between October and December of 2008). While awaiting sentencing he was in the process of being transported to state court by state officers to face sen-

tencing for robberies (none of them bank robberies) committed in October 2008 to which he had pleaded guilty in state court, when he escaped from the vehicle in which he was being transported. While at large following his escape he committed a rich mixture of federal and state offenses, including bank robbery, escape from federal custody, carjacking, and using or carrying a gun in connection with the other offenses. He was prosecuted in state court for the carjackings and in federal court (before Chief Judge Castillo) for the federal crimes.

Regarding the federal prosecution for escape—which may seem anomalous since Maday escaped from state rather than federal custody—we note that the state had custody of him at the time of his escape only by virtue of a writ of habeas corpus *ad prosequendum* requesting that he be transferred briefly from federal to state court so that the state court could sentence him. There was thus enough federal interest in his continuing in custody to justify charging him with escaping from federal custody even though the actual custodians from whom he escaped were state employees. See *United States v. Evans*, 159 F.3d 908, 911–13 (4th Cir. 1998).

In October 2009, a month after he was returned to custody, a state judge sentenced him to 13 years' imprisonment for the October 2008 robberies. In April 2010 he pleaded guilty in state court to the carjackings and was given a consecutive prison sentence of 30 years. In November 2013 Judge Gettleman sentenced him to 30 years in prison for the bank robberies to which he had pleaded guilty in his case before that judge. The sentence was approximately in the midpoint of the guidelines range for Maday's crimes. The

judge made the sentence consecutive to Maday's 30-year state sentence but concurrent with his 13-year state sentence. Judge Gettleman's decision to make the sentence he imposed consecutive to his 30-year state sentence is not as ominous as one might think. Illinois law grants day-for-day credit against an Illinois prison sentence; so Maday (if he behaves himself in prison) will be eligible to complete his state sentence after 21½ years. See 730 ILCS 5/3-6-3(a)(2.1). Moreover, though he's been in *federal* custody since 2008, the Illinois Department of Corrections deems his *state* sentence to have begun then, which will make him eligible for release from state custody after fewer than 15 years (21½–7 = 14½) despite his nominal state sentence of 43 years. See 730 ILCS 5/5-4.5-100(b).

When Judge Gettleman sentenced Maday, a trial in the case presided over by Judge Castillo had already ended with Maday's conviction of bank robbery, of escape from federal custody, and of the use of a gun both in the robbery and in the escape. But Judge Castillo had not yet imposed a sentence; he did so in May 2014. The conviction for possessing a gun after three convictions for violent felonies made Maday an "armed career criminal" subject therefore to a statutory minimum term of imprisonment of 15 years. 18 U.S.C. §§ 922(g), 924(e)(1). But his two convictions for using or carrying a gun during a crime of violence (the escape and bank robbery) turned out to be the real drivers of the sentence imposed by Judge Castillo. The first conviction, which was based on the jury's finding that Maday had brandished the weapon during the escape, carried a mandatory consecutive sentence of 7 years, § 924(c)(1)(A)(ii), while the second conviction, based on similar conduct during the robbery, carried a    mandatory    consecutive    sentence    of    25    years.

§ 924(c)(1)(C)(i). Maday's statutory minimum thus totaled 15 + 7 + 25 = 47 years.

The judge decided that the entire sentence should be concurrent with Maday's state sentence, and that the 15-year armed career criminal component of the federal sentence should be concurrent with the other counts and with Judge Gettleman's 30-year sentence. The result was an aggregate 62-year federal sentence (32 = [25 + 7] + 30), though should Maday receive maximum good-time credits in prison the sentence would drop to about 54 years. See *Barber v. Thomas*, 560 U.S. 474, 477–79 (2010). We say "maximum good-time credits" because it is unclear at this juncture during what periods of his incarceration he'll be able to earn good-time credits toward his federal sentence, given that he will be spending some time in federal and some time in state prisons.

Maday has served 2 years of his federal sentence. That leaves him, even with maximum good-time credits, with at least 52 years yet to serve, and as he is now 45 years old he will be 97 (should he live that long) when released, unless given early release under the Bureau of Prisons Compassionate Release Program. But early release is very rarely granted even to prisoners who become terminally ill. William Berry, "Extraordinary and Compelling: A Reexamination of the Justifications for Compassionate Release," 68 *Maryland Law Review* 850, 862–68 (2010); Casey N. Ferri, Note, "A Stuck Safety Valve: The Inadequacy of Compassionate Release for Elderly Inmates," 43 *Stetson Law Review* 197, 219–25 (2013). Only 142 requests were granted between 2006 and 2011. See Office of the Inspector General, U.S. Dep't of Justice, "The Federal Bureau of Prisons' Com-

passionate Release Program, Evaluation and Inspections Report I-2013-006" 34 (April 2013).

Judge Castillo committed two sentencing errors. One was making Maday's sentence run concurrently with his state sentence. In doing so the judge overlooked 18 U.S.C. § 924(c), which "forbids a federal district court to direct that a term of imprisonment under that statute run concurrently with any other term of imprisonment, whether state or federal." *United States v. Gonzales*, 520 U.S. 1, 11 (1997). The second mistake was to make the federal sentence that he was imposing run concurrently with the 15-year minimum sentence for being an armed career criminal. 18 U.S.C. § 924(c)(1)(D) provides that sentences for weapon brandishing, imposed under section 924(c), shall not run concurrently "with *any* other term of imprisonment imposed on the person" (emphasis added), which includes Maday's 15-year sentence for being an armed career criminal. E.g., *Abbott v. United States*, 562 U.S. 8, 13–15, 21–22 (2010); *United States v. Taylor*, 581 Fed. App'x 559, 560–61 (7th Cir. 2014).

So the minimum federal prison term for the crimes for which he was sentenced by Judge Castillo was 47 rather than 32 years. But we will not order Maday resentenced, because the government has not filed a cross-appeal. See *Greenlaw v. United States*, 554 U.S. 237, 243–54 (2008); *United States v. Rivera*, 411 F.3d 864, 867 (7th Cir. 2005). So Judge Castillo's 32-year sentence will stand, will run concurrently with Maday's state sentence, but will run consecutively to his other federal sentence, imposed by Judge Gettleman.

The remaining issue involves Judge Gettleman's sentencing; we've concluded that the judge did not adequately justify his decision to sentence Maday to 30 years and make that

very long sentence consecutive to an equally long state sentence (though a sentence that might be shortened considerably as a result of Illinois's generous day-for-day credit system). Maday was, it is true, a career criminal, but one who specialized in smallish bank robberies; he doesn't appear to have injured anyone in his crime sprees; and at age 43, when sentenced by Judge Gettleman, he was rapidly approaching the age at which most bank robbers are retired—it appears that only about 11 percent of bank robbers are 40 or older. FBI, U.S. Dep't of Justice, *Crime in the United States* 310 (2002). (This figure is from the late 1990s, but we have found no data suggesting that it has risen since.) The judge said he was imposing the long sentence as a general deterrent (*pour encourager les autres*, as the French put it). But he discussed in detail only one of the other sentencing factors that federal judges are required by 18 U.S.C. § 3553(a) to consider in deciding on the length of a sentence—namely specific deterrence (deterring the defendant from committing further crimes upon release). See 18 U.S.C. § 3553(a)(2)(C). But what he said about it suggests that he didn't think it would provide any justification for the sentence he was imposing. He ruminated: "Will you pose [a danger to the community] all of your life until you're a very old man? Probably not." Yet he sentenced Maday to a prison term that will keep him incarcerated long past the time when he is likely to be a danger to the community.

Among the other factors that a sentencing judge is required to consider is the defendant's "history and characteristics." 18 U.S.C. § 3553(a)(1). These include such things as a difficult upbringing, which may counsel some lenience, as in *United States v. Thomas*, 2015 WL 4399629, at *6–*7 (7th Cir. July 20, 2015); and the defendant's remorse (or lack thereof)

for his crime, as in *United States v. McGill*, 754 F.3d 452, 456–
57 (7th Cir. 2014). Judge Gettleman did say "I realize you
had a difficult childhood" and did point out the seriousness
of Maday's crimes, but he didn't mention the consecutive
mandatory minimums that Judge Castillo would have to
impose under 18 U.S.C. § 924(c)(1) and § 924(e)(1). (The
charges before Judge Gettleman carried no mandatory min-
imum.) Section 3553(a) requires that the sentence imposed
be no greater than necessary, see *United States v. Pennington*,
667 F.3d 953, 956–57 (7th Cir. 2102), and the judge's incom-
plete discussion of the statutory sentencing factors per-
suades us that his sentence does not reflect adequate consid-
eration of this principle. Although as we've said Judge Cas-
tillo's sentence shall stand because it has not been challenged
by the government (and no basis has been suggested for
Maday to challenge it as too severe), Judge Gettleman's sen-
tence must be vacated because it is challenged by Maday
and was the result of a flawed sentencing procedure.

The abiding mystery of this brace of cases is why closely
related, indeed overlapping, federal crimes committed by
the same person at roughly the same time were tried by two
different judges. One judge should have been assigned both
cases and told to defer sentencing until guilt in each had
been determined, as that would be key to deciding on
Maday's aggregate punishment. Among the confusions
caused by this split sentencing is that while Judge Gettle-
man's sentence treats the 13-year state sentence as if it were
to be served before the 30-year federal sentence that he im-
posed, Judge Castillo's sentence treats the two sentences as
having the opposite sequence.

Ordinarily, having concluded that an issue presented by a criminal appeal is not frivolous, we would deny counsel's motion to withdraw *and* order the case briefed. *Penson v. Ohio*, 488 U.S. 75, 81–83 (1988). But the constitutional right to counsel requires only that an indigent's appeal be resolved "in a way that is related to the merit of that appeal," *Smith v. Robbins*, 528 U.S. 259, 272–78 (2000), and in this unique case we can best do that by vacating the judgment in Judge Gettleman's case and remanding.

Counsel in the appeal in that case informs us that Maday does not wish to challenge his guilty plea, and so it is only the sentence in Judge Gettleman's case that requires correcting. We therefore vacate the sentence imposed by Judge Gettleman (but not Judge Castillo) and remand Judge Gettleman's case for resentencing. See 18 U.S.C. § 3742(f)(1).

REVERSED AND REMANDED